DASANAT REALTY CORPORATION, Plaintiff, *v.* RITA MURRAY, Defendant.

Municipal Court of New York, Borough of Manhattan, Seventh District, December 4, 1930.

*Milton Elias Schattman*, for the plaintiff.

*David Paris*, for the defendant.

LEWIS, D. C., J. On June 1, 1929, the plaintiff by written instrument leased to the defendant apartment No. 64 in premises No. 812 Riverside drive, borough of Manhattan, city of New York, for a term commencing on the 1st day of June, 1919, and ending on the 30th day of September, 1931, " at the yearly rental of $1,140, payable in equal installments in advance on the first day of each and every month during said term." This lease, among its numerous provisions, contains the following clause: " or if said premises become vacant or abandoned, Landlord may reenter same, by force or otherwise, * * * and at Landlord's option relet as agent of tenant, but lease may be made in name of Landlord or Landlord's agent and on such terms and for such period as Landlord may decide. Tenant will pay as damages

each month until the end of term first fixed hereunder, the difference between the rent herein reserved and the net rent received for such period by Landlord." (See plaintiff's Exhibit 1, par. 9.)

Indeed, in this same paragraph we find the following significant sentence: " No entry by Landlord under this lease shall be deemed a surrender or acceptance of surrender of the lease." And again the following: " If Tenant vacates said premises prior to the expiration of the term hereof, or if Tenant is removed by summary proceedings, Landlord shall have a right to reenter said premises for the purpose of decorating or otherwise preparing said premises for a new Tenant, and said entry by Landlord shall not be considered as an acceptance of any surrender, actual or implied." (See plaintiff's Exhibit 1, par. 9.)

During July, 1930, this tenant removed from the premises. On August 19, 1930, the landlord executed a lease with a new tenant (using the same printed form employed between these parties) upon the identical terms, except that the new lease commenced October 1, 1930, and was to end September 30, 1932, and the rental was fixed at a lower sum, to wit, $75 a month. (See plaintiff's Exhibit 2.)

It is conceded that this landlord allowed the new tenant occupancy during September, 1930, without the payment of any rent.

This action is brought to recover the rent for the months of July, August, September and October, at the rate of $95 a month, a total of $295.

Upon the trial it was admitted that the rent for July and August accrued prior to the execution of the new lease, and that plaintiff was entitled to the same. It was also stipulated that the defendant was to be credited with the sum of $85, this being the rent received from the new tenant for the month of October.

The defendant contends that these acts of the landlord in re-entering (after abandonment by the tenant) and reletting upon the terms stated, as a matter of law constituted an acceptance of the alleged surrender by the tenant. The landlord insists to the contrary.

Where the lease expressly authorizes a landlord to relet as agent for the tenant, and the tenant during his term abandons the premises, the re-entering and reletting by the landlord do not in themselves necessarily establish a surrender and acceptance.

Some of the opinions seem to create what I venture to characterize a " juridical norm," which would in such instances restrict the landlord's privilege of reletting to the unexpired term; hence, where the landlord ventures out of the worded confines by reletting

for a period beyond the unexpired term his conduct is to be deemed inconsistent with an existing relationship of landlord and tenant and implies an acceptance of the alleged surrender.

" It is so well settled as to be almost axiomatic that a surrender of premises is created by operation of law when the parties to a lease do some act so inconsistent with the existing relation of landlord and tenant as to imply that they have both agreed to consider the surrender as made. It has been held in this State that ' a surrender is implied, and so effected by operation of law. within the statute, when another estate is created by the reversioner or remainderman with the assent of the termor incompatible with the existing state or term.' " (*Gray* v. *Kaufman Dairy & I. Co.*, 162 N. Y. 388, 394.)

" But the consent is valid only if the landlord acts within the limits prescribed by it. If he goes beyond them he must be presumed to have acted, not under the authority of the consent, but on his own account, for a violation will not be presumed. Here he gave a new lease to a stranger for a whole year, when the tenant's term had only seven months to run. He, therefore, accepted the surrender." (*Bonsignore* v. *Koondel*, 134 Misc. 344, 346.)

The court is reluctant to subscribe to so hard and fast a formula. The invisible intent of the parties to such acts is not always so easily sighted.

Underlying the standard of construction at times adopted by the court one discerns an inherent desire to ascertain the good faith and actual intent of the parties in preference to making technical compliance with every letter of the lease the criterion; and in this way the very practical and beneficent object of keeping down the tenant's liability for rent will not suffer defeat.

So where a tenant abandons during his term, leaving the premises vacant and unfurnished, the landlord may put furniture in the apartment and endeavor to rent it as a furnished apartment for the benefit of the tenant, without his conduct constituting his acceptance of an alleged surrender. (*Grigsby* v. *Ruland*, 210 App. Div. 640.)

In search for intent the matter of the new term for which the landlord rents to another is not to be considered conclusive; it is only some evidence on this question.

" The lease of the tenants, by the terms of their hiring, was to expire September 30, 1919. The new lease which the landlords made to the Haffners began on August 1, 1917, and was to terminate on July 31, 1927 — *nearly eight years after the termination of the original lease. There is no separation or apportionment between the two terms, nor any effort to distinguish the period ending*

*September 30, 1919, to which a reletting could alone have been made by plaintiffs, as agents for the tenants, from the further period over to 1927, which plaintiffs could deal with only in their own rights as owners.* * * * The term created by the new lease is *one of the elements* entering into the question of whether it was executed by plaintiffs in their right as owners or partly as such and partly as agents for their original tenants." (Italics mine.) (*Brill* v. *Friedhoff*, 192 App. Div. 802, 810.)

In the instant case the language of the lease distinctly and expressly empowered the landlord to sublet in his own name or that of the tenant, " and on such terms and for such period as the Landlord may decide." With studied precaution other terms are incorporated in the lease to save the conduct of the landlord in re-entering from spelling a surrender and acceptance. (See excerpts from plaintiff's Exhibit 1, par. 9, *supra*.)

There is, however, another element which must be considered by this court in construing the conduct of the parties. The landlord gave the new tenant occupancy for the month of September without the payment of any rent. This particular feature has considerable significance.

" (c) The lease to the Haffners provided that the landlords agreed to deliver possession of the demised premises on or before April 1, 1917, and to permit them to occupy the same without cost or charge by way of rent until the lease commenced August 1, 1917. Was this an exercise of dominion by the owners, who had taken full charge and control of the premises in their own right? For the letter from the original tenants provided for the reletting of the premises and the collection of rent that the damage to the tenants might be reduced, and conferred no authority to give free possession to any one. Nor was it shown that such free occupation was necessary to effect a lease of the premises; or that it was not merely an inducement to a long lease and an improvement of the premises for the benefit of the owners only." (*Brill* v. *Friedhoff*, *supra*, 813.)

The trial was brief; the evidence scant; both sides apparently assuming the case presented only a question of law. The established facts are insufficient to warrant a definite and conclusive holding on all the issues presented. (*Brill* v. *Friedhoff*, *supra*, 813.)

The plaintiff, however, is entitled to judgment for rent for the months of July and August. (*Schwartz* v. *Brucato*, 57 App. Div. 202.)

The balance of the plaintiff's claim is dismissed without prejudice.

The alleged defense of surrender and acceptance is also dismissed without prejudice.

Judgment accordingly; five days' stay.